MAYER BROWN LLP
Keri E. Borders (SBN 194015)
*kborders@mayerbrown.com*
Dale J. Giali (SBN 150382)
*dgiali@mayerbrown.com*
Daniel D. Queen (SBN 292275)
*dqueen@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, California 90071-1503
Telephone:    (213) 229-9500
Facsimile:    (213) 625-0248

Attorneys for Defendant
BIRCH BENDERS, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTNEY PINO and TERRI GAMINO, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BIRCH BENDERS, LLC,<br><br>Defendant. | Case No. 3:22-CV-02194-TSH<br><br>Honorable Thomas S. Hixson<br><br>**DEFENDANT BIRCH BENDERS, LLC'S MOTION TO DISMISS THE COMPLAINT**<br><br>Hearing Date: July 7, 2022<br>Time:  10:00 a.m.<br>Courtroom: G<br><br>Complaint Filed: April 7, 2022<br><br>[*Declaration of Keri E. Borders and Proposed Order filed contemporaneously herewith*] |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 7, 2022 at 10:00 a.m., or as soon thereafter as this matter may be heard in the San Francisco Courthouse, Courtroom G, 15th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Thomas S. Hixson, defendant Birch Benders, LLC will and hereby does move the Court for an order pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6) dismissing the complaint and each claim contained therein against Birch Benders, LLC with prejudice on the grounds that plaintiffs fail to state a claim upon which relief may be granted and the Court lacks subject-matter jurisdiction because plaintiffs have no standing.

Good cause exists to grant this motion because:

1.     Plaintiffs' claims are expressly preempted by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343-1(a), and impliedly preempted pursuant to *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

2.     Plaintiffs lack Article III standing to pursue their claims for injunctive relief and they lack Article III standing because they have not suffered an injury in fact.

3.     Plaintiffs have not adequately alleged injury and reliance to support their claims.

This motion is based on this notice, the accompanying memorandum of points and authorities, the concurrently filed Declaration of Keri E. Borders, all pleadings and documents on file in this case, and on such other written and oral argument as may be presented to the Court.

Dated: June 2, 2022

MAYER BROWN LLP
Keri E. Borders
Dale J. Giali
Daniel D. Queen

By: */s/ Keri E. Borders*
Keri E. Borders

Attorneys for Defendant
Birch Benders, LLC

1

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ........................................................... 1

I.      INTRODUCTION ........................................................................................ 2

II.     BACKGROUND ........................................................................................... 3

      A.      FDA Regulations Governing Protein Content Information On Labels ............... 3

      B.      Plaintiffs' Complaint ................................................................................. 5

      C.      Prior Dismissals Of Near-Identical Claims ............................................. 5

III.    THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS ........................................ 6

      A.      Plaintiffs' Claim That Protein Labeling Claims Are Misleading If They
           Are Not Corrected For Digestibility Is Expressly Preempted ............................ 6

      B.      Plaintiffs' Percent Daily Value Claims Fail ............................................... 9

           1.      Plaintiffs' Percent Daily Value Claims Are Impliedly Preempted .......... 9

           2.      Plaintiffs Lack Standing And Cannot Establish Reliance Necessary
               For Their Percent Daily Value Claims ..................................................... 13

      C.      Plaintiffs Lack Standing To Pursue Injunctive Relief ........................................ 14

IV.     ALTERNATIVELY, THE COURT SHOULD STAY THIS ACTION PENDING
      THE APPEAL OF DISMISSALS OF NEAR-IDENTICAL CASES ............................ 15

V.      CONCLUSION ............................................................................................ 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Bard IVC Filters Prod. Liab. Litig.*,
   969 F.3d 1067 (9th Cir. 2020) ...........................................................................................12

5

*Bohac v. Gen. Mills, Inc.*,
6   2014 WL 1266848 (N.D. Cal. Mar. 26, 2014).........................................................................14

7

*Borchenko v. L'Oreal USA, Inc.*,
   389 F. Supp. 3d 769 (C.D. Cal. 2019) .............................................................................10, 11
8

9

*Brown v. Kellogg Co.*,
   2022 WL 983268 (N.D. Cal. Apr. 1, 2022) .................................................................6, 15, 16

10

*Brown v. Natures Path Foods, Inc.*,
11   2022 WL 717816 (N.D. Cal. Mar. 10, 2022)..........................................................................6, 8

12

*Brown v. Van's Int'l Foods, Inc.*,
   2022 WL 1471454 (N.D. Cal. May 10, 2022) ....................................................................6, 12
13

14

*Buckman Co. v. Plaintiffs' Legal Cmte.*,
   531 U.S. 341 (2001)........................................................................................................ *passim*

15

*Chong v. KIND LLC*,
16   2022 WL 464149 (N.D. Cal. Feb. 15, 2022) .................................................................. *passim*

17

*Cimoli v. Alacer Corp.*,
   546 F. Supp. 3d 897 (N.D. Cal. July 1, 2021) ........................................................................15
18

19

*In re Coca-Cola Prods. Mkt'g & Sales Pracs. Litig.*,
   2021 WL 3878654 (9th Cir. Aug. 31, 2021)...........................................................................14

20

*Daniel v. Ford Motor Co.*,
21   806 F.3d 1217 (9th Cir. 2015) ...............................................................................................7

22

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ................................................................................................14
23

24

*Davis v. HSBC Bank Nevada, NA*,
   691 F.3d 1152 (9th Cir. 2012) ...............................................................................................7

25

*DeBons v. Globus Med., Inc.*,
26   2014 WL 12495351 (C.D. Cal. Aug. 8, 2014).........................................................................13

27

*Durnford v. MusclePharm Corp.*,
   907 F. 3d 595 (9th Cir. 2018) .................................................................................................9

28

ii

*In re Epogen & Aranesp Off-Label Mktg. & Sales Pracs. Litig.*,
   590 F. Supp. 2d 1282 (C.D. Cal. 2008) ..................................................................10

*Fraker v. KFC Corp.*,
   2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) .......................................................10

*Goldsmith v. Allergan, Inc.*,
   2011 WL 147714 (C.D. Cal. Jan. 13, 2011) .........................................................10

*Hinkley v. Baker Mills*,
   2022 WL 1767108 (D. Utah Apr. 26, 2022).................................................6, 7, 8

*Jackson v. Gen. Mills, Inc.*,
   2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) ......................................................15

*Joslin v. Clif Bar & Co.*,
   2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) .....................................................14

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ...........................................................................................14

*Lanovaz v. Twinings N. Am., Inc.*,
   726 F. App'x 590 (9th Cir. 2018) ........................................................................14

*Minor v. Baker Mills*,
   2020 WL 11564643 (N.D. Cal. Nov. 12, 2020) .....................................................6

*Nacarino v. Kashi Co.*,
   2022 WL 390815 (N.D. Cal. Feb. 9, 2022) ................................................. *passim*

*Nacarino v. Kashi Co.*,
   No. 22-15377 (9th Cir. filed March 14, 2022).......................................................6

*Nexus Pharm., Inc. v. Cent. Admixture Pharm. Servs., Inc.*,
   2020 WL 6555052 (C.D. Cal. Oct. 29, 2020)......................................................11

*Ocampo v. Apple, Inc.*,
   2022 WL 1786583 (N.D. Cal. Apr. 7, 2022) .................................................15, 16

*Perez v. Nidek Co.*,
   711 F.3d 1109 (9th Cir. 2013) ........................................................................10, 12

*Rahman v. Mott's LLP*,
   2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) ....................................................15

*Stengel v. Medtronic, Inc.*,
   704 F.3d 1224 (9th Cir. 2013) ........................................................................10, 12

*Stover v. Experian Holdings, Inc.*,
   978 F.3d 1082 (9th Cir. 2020) ..............................................................................14

iii

*Swartz v. Dave's Killer Bread, Inc.*,
    2022 WL 1766463 (N.D. Cal. May 20, 2022) ...........................................................6

*Swearingen v. Healthy Beverage, LLC*,
    2017 WL 1650552 (N.D. Cal. May 2, 2017) .............................................................7

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ............................................................................................13

*United States v. Sivilla*,
    714 F.3d 1168 (9th Cir. 2013) .................................................................................12

*Verzani v. Costco Wholesale Corp.*,
    2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) .........................................................11

**Statutes**

21 U.S.C. § 337(a) ..........................................................................................................10, 13

21 U.S.C. § 343-1 ........................................................................................................ *passim*

21 U.S.C. § 343(q)(1)(D) .......................................................................................................3

Cal. Health & Safety Code § 110100 ...................................................................................11

Cal. Health & Safety Code § 110380 ...................................................................................11

Cal. Health & Safety Code § 110505 ...................................................................................11

**Other Authorities**

21 C.F.R. § 101.9 ..........................................................................................................3, 4, 7, 8

21 C.F.R. § 101.13 ..........................................................................................................3, 7, 8

58 Fed. Reg. 2079 (Jan. 6, 1993) .......................................................................................4, 5

81 Fed. Reg. 33742 (May 27, 2016) .......................................................................................3

FDA, *A Food Labeling Guide: Guidance for Industry* 30 (Jan. 2013), *available at*
    https://www.fda.gov/media/81606/download ...........................................................5

Industry Resources on the Changes to the Nutrition Facts Label, U.S. Food &
    Drug Administration (Jan. 2022), *available at* https://www.fda.gov/food/food-
    labeling-nutrition/industry-resources-changes-nutrition-facts-
    label#LabelClaims (last accessed June 2, 2022) .....................................................4

1

## STATEMENT OF ISSUES TO BE DECIDED

2      1.      Whether plaintiffs' claims are expressly preempted by the Federal Food, Drug,

3  and Cosmetic Act, 21 U.S.C. § 343-1(a).

4      2.      Whether plaintiffs' claims are impliedly preempted pursuant to *Buckman Co. v.*

5  *Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

6      3.      Whether plaintiffs lack Article III standing to pursue their claims for injunctive

7  relief.

8      4.      Whether plaintiffs lack Article III standing because they have suffered no injury

9  in fact.

10      5.      Whether plaintiffs have adequately alleged injury and reliance to support their

11  claims.

12      6.      Whether the Court should stay this action pending the Ninth Circuit appeals of

13  district court orders dismissing near-identical claims.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.     **<u>INTRODUCTION</u>**

This action is the latest in a series of cases brought by the same plaintiffs' counsel making copy-and-paste allegations that food manufacturers have misstated the amount of protein in their products. Yet *every* judge that has considered these cases—including Chief Judge Seeborg and Judges Chhabria, Gilliam, Rogers, and Orrick in this district—has dismissed the plaintiffs' claims as preempted. This Court should do the same.

Plaintiffs allege that defendant Birch Benders LLC ("Birch Benders") manufactures pancake and waffle mixes that label the front of those products with plain statements about the quantity of protein in each serving—*e.g.*, "10g protein per serving." Plaintiffs never dispute that the products, in fact, contain the amount of protein that the label says they do. Instead, they argue that these statements are deceptive because some of the protein in the products (e.g., plant proteins) is not 100% digestible, so consumers do not fully absorb all of the protein contained in the products. But Birch Benders never makes any representations about the protein's digestibility, so there is nothing false or misleading about the statements on its products. Moreover, the U.S. Food and Drug Administration ("FDA") has issued regulations *expressly permitting* Birch Benders and other manufacturers to quantify the protein per serving without adjusting that protein for digestibility. Accordingly, as other courts repeatedly have found, the federal Food, Drug, and Cosmetic Act ("FDCA") preempts plaintiffs' claims.

Plaintiffs also argue that FDA regulations require Birch Benders to identify the percent daily value of protein per serving in the Nutrition Facts box on its products, yet Birch Benders failed to do so. However, as other district courts again have found, these claims cannot survive dismissal, either. For one, such claims are impermissible under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), which held that consumers may not privately enforce the FDCA, including by using alleged violations of the FDCA as a predicate for state-law claims. Moreover, plaintiffs cannot establish Article III standing or reliance where, as here, they allegedly were well aware that Birch Benders had not provided the percent-daily-value amount for protein, yet decided to purchase the products, anyway. Nor can plaintiffs establish standing for their injunctive relief claims, having conceded that they would only consider repurchasing Birch Benders' products if

DEFENDANT BIRCH BENDERS, LLC'S MOTION TO DISMISS;
CASE NO. 3:22-CV-02194-TSH

they were reformulated (Compl. ¶¶ 62, 67), and given that they indisputably are now well aware that Birch Benders' labels state the absolute amount of protein rather than some amount adjusted for digestibility.

The Court therefore should dismiss plaintiffs' claims in their entirety. Alternatively, the Court should stay this action in its entirety while the Ninth Circuit considers plaintiff's counsel's appeals in its other protein labeling cases, which are now pending.

## II.     BACKGROUND

### A.     FDA Regulations Governing Protein Content Information On Labels

This case relates to the amount of protein per serving of food products and FDA regulations governing the labeling of that amount. The FDCA and the FDA implementing regulations promulgated under it require that the amount of "total protein" per serving appear on the label. 21 U.S.C. § 343(q)(1)(D). This nutrition information, referred to by FDA as nutrition labeling, appears in the Nutrition Facts box on the label, which is subject to precise regulations appearing at 21 C.F.R. § 101.9. A food manufacturer is allowed to take the nutrition information from the Nutrition Facts box and place it elsewhere on a food label. *Id.* § 101.13(b) & (c).

FDA regulations specifically state that the total amount of protein by weight in grams in a food product should be "calculated on the basis of the factor 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the 'Official Methods of Analysis of the AOAC International,' except when official AOAC procedures described in this paragraph (c)(7) require a specific factor other than 6.25, that specific factor shall be used." 21 C.F.R. § 101.9(c)(7); *see also, e.g.*, FDA Final Rule, Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33742, 33869 (May 27, 2016) ("For purposes of nutrition labeling, among others, protein is estimated by determining the nitrogen content of an ingredient and multiplying it by a nitrogen-to-protein conversion factor."). Neither FDA nor the governing regulation alters this required "nitrogen method" for measuring the total amount of protein when the product makes a front-of-pack protein claim. Indeed, earlier this year, FDA

issued a guidance confirming that "protein nutrient content claims" on product labels can and should be based on the nitrogen method.[1]

In addition to these regulations, FDA has specific requirements for calculating and labeling a percent daily value for protein in the Nutrition Facts box:

(i) A statement of the corrected amount of protein per serving, as determined in paragraph (c)(7)(ii) of this section, calculated as a percentage of the RDI or DRV for protein, as appropriate, and expressed as Percent of Daily Value, may be placed on the label, except that such a statement shall be given if a protein claim is made for the product, or if the product is represented or purported to be specifically for infants through 12 months or children 1 through 3 years of age. When such a declaration is provided, it should be placed on the label adjacent to the statement of grams of protein and aligned under the column headed "Percent Daily Value," and expressed to the nearest whole percent.

21 C.F.R. § 101.9(c)(7)(i).

As specified in the regulations, the "corrected amount of protein per serving" is to be expressed as a percent of daily value as determined by applying a Protein Digestibility Corrected Amino Acid Score ("PDCAAS") to the total amount of protein. 21 C.F.R. § 101.9(c)(7)(ii). PDCAAS is a methodology used to score the "quality" of protein based on how it is digested (absorbed) by the body. *See generally* Food Labeling: Mandatory Status of Nutrition Labeling and Nutrient Content Revision, Format for Nutrition Label, 58 Fed. Reg. 2079, 2103 (Jan. 6, 1993). PDCAAS is a calculation that compares the amount of the essential amino acids in the food to a scoring pattern derived from the essential amino acid requirements of a preschool-age child. *Id.* at 2104. The highest PDCAAS value that any protein can achieve is 1.0, indicating that the protein will provide 100% (or more) of all the amino acids required in the diet. *See* 21 C.F.R. § 101.9(c)(7)(ii). PDCAAS does ***not*** provide a quantitative measure of the total amount of

---

[1] *See* Industry Resources on the Changes to the Nutrition Facts Label, U.S. Food & Drug Administration (Jan. 2022), *available at* https://www.fda.gov/food/food-labeling-nutrition/industry-resources-changes-nutrition-facts-label#LabelClaims (last accessed June 2, 2022).

protein in a food product, but instead seeks to rank the purported quality of the protein by what percentage of the protein is digested by the body. That is why the regulations require PDCAAS scoring **solely** in connection with the calculation of the percent daily value.[2]

### B.    Plaintiffs' Complaint

Plaintiffs Brittney Pino and Terri Gamino, two California residents, bring a putative class action on behalf of purchasers of pancake and waffle mix products manufactured by Birch Benders. Complaint, Dkt. No. 1 ("Compl.") ¶¶ 1, 9-11. Plaintiffs allege that those products' front labels stated "specific amounts of protein per serving"—*e.g.*, "10g Protein"—but that these statements were "misleading." *Id.* ¶¶ 2, 8. Plaintiffs never contend that Birch Benders failed to use the FDA-authorized nitrogen method for calculating those protein amounts. Instead, plaintiffs allege that these statements mislead consumers because they do not reflect any information about the *quality* of the protein in Birch Benders' products, which they claim is not fully digestible. *Id.* ¶¶ 7-8.  Plaintiffs further allege that they were misled because certain products did not provide a PDCAAS-adjusted percent daily value of protein in the products' Nutrition Facts boxes, as required by FDA regulations. *Id.* ¶¶ 6-7. Plaintiffs contend that as a result of these supposed misrepresentations, they paid a "price premium for the products." *Id.* ¶ 9.

### C.    Prior Dismissals Of Near-Identical Claims

Plaintiffs' counsel have filed a series of cases in the Ninth Circuit against other food manufacturers—including KIND (snack bars), Kashi (cereal), Kellogg Company (cereal, granola bars, frozen foods, and other products), Nature's Path (breakfast and snack products), Dave's

---

[2] FDA does not require that the percent daily value for protein be provided in a standard Nutrition Facts box because, based on current scientific evidence, people get sufficient protein from a normal daily diet. *See* FDA, *A Food Labeling Guide: Guidance for Industry* 30 (Jan. 2013), *available at* https://www.fda.gov/media/81606/download. Further, PDCAAS scoring does not indicate the value of individual proteins consumed as part of a mixed diet because the calculation of the corrected amount of protein of a food does not take into account the complementary potential of the food in a mixed diet, *i.e.*, how a food rich in a particular essential amino acid can "complement" a food low in that amino acid to result in a total diet that provides sufficient amounts of the amino acid. 58 Fed. Reg. at 2105. Because humans do not consume only a single type of protein and different sources of protein complement each other, plant-based proteins are not "inferior," regardless of their PDCAAS score.

Killer Bread and Flower Foods (bread products), and Baker Mills (pancake mix)—asserting near-identical claims regarding supposed mislabeling of protein content. To date, *every* judge to consider plaintiffs' counsel's arguments has granted defendants' motions to dismiss these claims. *See Chong v. KIND LLC*, --- F. Supp. 3d ----, 2022 WL 464149 (N.D. Cal. Feb. 15, 2022) (Seeborg, C.J.) (granting motion to dismiss);[3] *Nacarino v. Kashi Co.*, --- F. Supp. 3d ----, 2022 WL 390815 (N.D. Cal. Feb. 9, 2022) (Chhabria, J.) (same); *Brown v. Kellogg Co.*, 2022 WL 983268 (N.D. Cal. Apr. 1, 2022) (Chhabria, J.) (same); *Brown v. Natures Path Foods, Inc.*, 2022 WL 717816 (N.D. Cal. Mar. 10, 2022) (Gilliam, J.) (same[4]); *Brown v. Van's Int'l Foods, Inc.*, 2022 WL 1471454 (N.D. Cal. May 10, 2022) (Orrick, J.) (same); *Swartz v. Dave's Killer Bread, Inc.*, 2022 WL 1766463 (N.D. Cal. May 20, 2022) (Rogers, J.) (same); *Hinkley v. Baker Mills*, 2022 WL 1767108 (D. Utah Apr. 26, 2022) (Jenkins, J.) (same).

Plaintiffs in the *Chong*, *Nacarino*, and *Kellogg* actions have filed appeals to the Ninth Circuit. *See Chong v. KIND*, No. 22-15368 (9th Cir. filed March 11, 2022); *Nacarino v. Kashi Co.*, No. 22-15377 (9th Cir. filed March 14, 2022), *Brown v. Kellogg Co.*, No. 22-15658 (9th Cir. filed May 2, 2022). Although Birch Benders' counsel proposed that the parties agree to stay this action until the Ninth Circuit has the opportunity to consider the issues raised in these appeals, plaintiffs' counsel rejected that proposal and refused to agree to a stay. *See* Declaration of Keri Borders ("Borders Decl.") ¶ 2.

### III.   THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS

### A.   Plaintiffs' Claim That Protein Labeling Claims Are Misleading If They Are Not Corrected For Digestibility Is Expressly Preempted

The crux of plaintiffs' complaint is that Birch Benders' front-of-pack protein claims are deceptively overstated because they have not been adjusted for digestibility using PDCAAS. *See,*

---

[3] Chief Judge Seeborg initially denied a motion to dismiss in another one of plaintiffs' cases—*Minor v. Baker Mills*, 2020 WL 11564643 (N.D. Cal. Nov. 12, 2020)—but subsequently acknowledged "that *Minor* was incorrectly decided." *Chong*, 2022 WL 464149, at *1.

[4] In *Natures Path*, Judge Gilliam dismissed the claims analogous to those here, but permitted a third claim—which concerned the defendant's disclosures about "added ingredients," and did not relate to any of the claims asserted in this action—to proceed. 2022 WL 717816 at *7.

1   *e.g.*, Compl. ¶¶ 7-8, 22, 38-43, 45. Plaintiffs do not dispute that 21 C.F.R. § 101.9(c)(7)

2   expressly requires Birch Benders to use the total protein quantity—using the nitrogen method,

3   and unadjusted by PDCAAS—when identifying the quantity of protein per serving in the

4   Nutrition Facts box. Nevertheless, plaintiffs contend that Birch Benders' statements about the

5   protein in its products are impermissible because another FDA regulation, 21 C.F.R.

6   § 101.13(i)(3), generally prohibits manufacturers from making "false or misleading" statements

7   about the "amount or percentage of a nutrient" in their products. Compl. ¶ 8.

8     Plaintiffs' allegations cannot possibly establish that Birch Benders' front-of-pack protein

9   quantity statements are "false or misleading" when plaintiffs never dispute that these allegations

10   *accurately state the total amount of protein in the relevant products*. Although "[p]laintiffs

11   contend the statement is misleading because the human body cannot digest all of the protein,"

12   Birch Benders' "packaging makes no claim or insinuation about protein digestibility," so Birch

13   Benders' "statement of protein content by weight is . . . accurate." *Hinkley*, 2022 WL 1767108,

14   at *2. In fact, the labels' alleged statement that the products contain "10g protein" is

15   "functionally identical to the examples of permissible statements listed in [section 101.13(i)(3)]:

16   '(e.g., '100 calories' or '5 grams of fat')." *Id.*[5] Plaintiffs' claims, if successful, actually would

17   transform Birch Benders' truthful labeling statement identifying the *total* amount of protein

18   according to the FDA-mandated measurement method into a deceptive one that only identifies a

19   subset of total protein, *i.e.*, the "complete" proteins.[6]

20

21   _____

22   [5] Plaintiffs' theory is particularly absurd in the context of Birch Benders' Plant Protein Pancake
and Waffle Mix products, which are the only Birch Benders products that plaintiff Pino claims to
have purchased. *See* Compl. ¶ 58. As the image at paragraph 20 of the Complaint makes obvious,
23   a main feature of the product is that it uses vegan "PLANT PROTEIN." Thus, while plaintiffs
complain that "[m]any plant-based proteins are only 85% digestible" and "[p]lant proteins rarely
24   contain all nine essential amino acids" (Compl. ¶¶ 30, 33), it is clear that "plant protein" is
*exactly* what consumers of such products are looking for, and they could not possibly have been
25   misled that the product contained 100% digestible protein.

26   [6] For the same reason, plaintiffs fail to plausibly allege reliance and deception, which are
required elements of their claims. *See, e.g.*, *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th
27   Cir. 2015) (UCL, CLRA); *Davis v. HSBC Bank Nevada, NA*, 691 F.3d 1152, 1160-63 (9th Cir.
2012) (FAL, common law fraud); *Swearingen v. Healthy Beverage, LLC*, 2017 WL 1650552, at
28   *4-5 (N.D. Cal. May 2, 2017) (unjust enrichment).

Regardless, plaintiffs' argument that the Court should disregard section 101.9(c)(7) in favor of section 101.13(i)(3) makes no sense. It cannot be that FDA permits (indeed, *mandates*) that food manufacturers quantify protein one particular way on their Nutrition Facts box, but prohibits them from using the same exact methodology elsewhere on their products' label. Indeed, Judge Chhabria previously rejected plaintiffs' theory on precisely this ground:

[T]he regulations authorize the nitrogen-content method and ***do not require manufacturers to adjust statements of protein quantity for digestibility*** . . . . [T]his authorization comes from [21 C.F.R. §] 101.9(c)(7), which says that a manufacturer may use the nitrogen-content method without quality adjustment when stating the amount of protein in the Nutrition Facts label. Against the backdrop of this protein-specific provision, ***the general language of section 101.13 cannot be interpreted as proclaiming that it is "false or misleading" to use the same statement***—"11g Protein"—***on the front of the box as is authorized in the Nutrition Facts label***. The FDA has made a value judgment that the nitrogen-content method, while perhaps not as accurate as direct-measurement techniques, is sufficient. Similarly, the FDA permits manufacturers to list the amount of protein in a product without correcting for digestibility. (Indeed, the regulations refer to this unadjusted figure as the "actual amount of protein" in a product. 21 C.F.R. § 101.9(c)(7)(iii).). ***Together, this requires a conclusion that [the defendant]'s statements on the front of the package are not "misleading" within the meaning of the FDA's regulations***.

*Nacarino*, 2022 WL 390815, at *3-4 (emphasis added). Chief Judge Seeborg and other judges in this district and circuit have reached the exact same conclusion. *See, e.g.*, *Chong*, 2022 WL 464149, at *3 ("[A] correct reading of the regulations establishes that producers may state grams of protein even outside the Nutrition Facts panel calculated by the nitrogen method, and without adjustment for digestibility."); *Natures Path*, 2022 WL 717816, at *7 (FDA "regulations do not require protein content claims to adjust for digestibility"); *Hinkley*, 2022 WL 1767108, at *2

("[T]he nutrition-facts-panel regulations expressly permit calculation of protein content using the nitrogen method.").

Plaintiffs attempt to avoid this deficiency by alternatively arguing that Birch Benders did not include the "percent daily value" of protein in the Nutrition Facts box, and that Birch Benders' front-of-pack protein statements were rendered misleading due to the "absence of [this] statement." Compl. ¶ 7. But again, as Judge Chhabria has explained, the fact that FDA requires manufacturers to provide a PDCAAS-adjusted percent daily value figure "elsewhere on the packaging . . . ***does not mean that statements of protein quantity would be misleading without this additional context***." *Nacarino*, 2022 WL 390815, at *4 (emphasis added). Indeed, "[t]o hold otherwise would be to find that an FDA-approved protein measurement technique is inherently misleading. This is not a plausible interpretation of the regulations." *Id.* Thus, while the FDA regulations recognize that some consumers may want additional information about protein digestibility and provide for inclusion of that information in the percent daily value section of the Nutrition Facts box, the purpose of that regulation is "***not*** to remedy an otherwise misleading figure" on the front of the label. *Id.* (emphasis added).

Accordingly, plaintiffs' claims seek to impose labeling requirements "that [are] not identical to the requirement[s]" of the FDCA and are expressly preempted. *See* 21 U.S.C. § 343-1(a); *see also Durnford v. MusclePharm Corp.*, 907 F. 3d 595, 603 (9th Cir. 2018) (state-law claims preempted where they "impose requirements for the measurement of protein . . . different from those permitted under the FDCA"). This Court therefore should dismiss plaintiffs' claims.

**B.     Plaintiffs' Percent Daily Value Claims Fail**

Plaintiffs' alternative theory of liability—that plaintiffs were deceived because Birch Benders failed to include a percent-daily-value figure for protein in its Nutrition Facts box—fails for two independent reasons: (i) such claims are impliedly preempted, and (ii) plaintiffs cannot establish standing or the requisite reliance to support such claims.

**1.     Plaintiffs' Percent Daily Value Claims Are Impliedly Preempted**

Plaintiffs' claims based on the absence of the percent daily value in the Nutrition Facts box should be dismissed as impliedly preempted under *Buckman Co. v. Plaintiffs' Legal*

9

1   *Committee*, 531 U.S. 341, 353 (2001). *Buckman* preemption is a function of two principles. *First*,

2   a consumer may not impose—under state law—food label requirements that are different from

3   those imposed under the FDCA and its regulations. 21 U.S.C. § 343-1. *Second*, a consumer has

4   no ability to privately enforce the FDCA. 21 U.S.C. § 337(a). Congress provided no private right

5   of action under the FDCA and expressly wrote into the law that all enforcement is to be by the

6   U.S. government (*e.g.*, the U.S. Food and Drug Administration), and, in limited circumstances

7   not present here, state agencies. *Id*. Consumers may not side-step the no-private-right-of-action

8   principle by using alleged violations of the FDCA as a predicate for state-law claims. *See*

9   *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 774 (C.D. Cal. 2019) (FDCA impliedly

10  preempts plaintiffs' UCL claim); *Goldsmith v. Allergan, Inc.*, 2011 WL 147714, at *8 (C.D. Cal.

11  Jan. 13, 2011) ("No matter how artfully the Complaint is pleaded in attempting to enforce the

12  FDCA, Plaintiff cannot enforce the FDCA's off-label advertising provisions simply by calling it

13  a violation of the UCL."); *In re Epogen & Aranesp Off-Label Mktg. & Sales Pracs. Litig.*, 590 F.

14  Supp. 2d 1282, 1290-91 (C.D. Cal. 2008) ("[P]laintiffs may not use . . . state unfair competition

15  laws as a vehicle to bring a private cause of action that is based on violations of the FDCA.");

16  *Fraker v. KFC Corp.*, 2007 WL 1296571, at *4 (S.D. Cal. Apr. 30, 2007) ("[T]o the extent

17  Plaintiff contends that alleged violations of the FDCA and Sherman Law give rise to viable state

18  law claims, such claims are impliedly preempted by the FDCA."). Private claims that "exist

19  solely by virtue of the FDCA" are not permitted. *Buckman*, 531 U.S. at 353.

20      Flowing from these two principles is a "'narrow gap' through which a state-law claim

21  must fit to escape preemption by the FDCA: 'The plaintiff must be suing for conduct that

22  *violates* the FDCA (or else his claim is expressly preempted by [21 U.S.C. § 343-1], but the

23  plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be

24  impliedly preempted under *Buckman*).'" *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013)

25  (citation omitted). Likewise, plaintiffs run afoul of *Buckman* if their claims do not "rely[] on

26  traditional state tort law which had predated the federal enactments in question." *Buckman*, 531

27  at 353; *see also Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1235 (9th Cir. 2013) (binding 7-judge

28  concurrence) (claim permissible if it does "not exist solely by virtue of [federal] enactments").

1   But plaintiffs cannot satisfy these requirements. Their attempts to hold Birch Benders

2   liable for allegedly failing to include the percent daily value of protein are based directly on

3   violations of the FDCA itself. *See, e.g.*, Compl. ¶¶ 6, 22, 36-37, 44-45, 107; *Verzani v. Costco*

4   *Wholesale Corp.*, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010) ("[Plaintiff's] persistent

5   allegations that Costco's labeling of the Shrimp Tray violates the . . . [FDA's] regulations on the

6   labeling of 'shrimp cocktails' indicates that his true purpose is to privately enforce alleged

7   violations of the FDCA, rather than to bring a [state-law] claim for unfair and deceptive business

8   practices."), *aff'd*, 432 F. App'x 29 (2d Cir. 2011). Plaintiffs "request that this Court enjoin

9   Defendant from continuing to employ the unlawful methods, acts and practices alleged" (*id.*

10  ¶¶ 82, 95), but that's merely another way of requesting that this Court supplant FDA in its

11  statutory role of enforcing the FDCA. *Borchenko*, 389 F. Supp. 3d at 774.

12  Plaintiffs attempt to circumvent their *Buckman* preemption by alleging that California's

13  Sherman Law provides an independent basis to bring their claims (*see, e.g.*, *id.* ¶¶ 35, 44, 46-47,

14  106-07), but that statute was enacted *after* the FDCA and it relies entirely on the FDCA to

15  impose any liability. *See* Cal. Health & Safety Code §§ 110100, 110380, 110505 (incorporating

16  federal food labeling regulations adopted pursuant to the FDCA); Compl. ¶¶ 35, 106. Because

17  "the Sherman Law references and incorporates the FDCA," the "Court cannot grant any relief to

18  [p]laintiff[s] without referring to and applying provisions of the FDCA." *Borchenko*, 389 F.

19  Supp. 3d at 773; *cf. Nexus Pharm., Inc. v. Cent. Admixture Pharm. Servs., Inc.*, 2020 WL

20  6555052, at *3 (C.D. Cal. Oct. 29, 2020) (recognizing that plaintiff is "suing to privately enforce

21  the FDCA" where plaintiff's "claims exist only because of the FDCA's requirements"). In fact,

22  the Sherman Law provides that "[a]ll food labeling regulations *and any amendments to those*

23  *regulations* adopted pursuant to the federal act, in effect on January 1, 1993, *or adopted on or*

24  *after that date* shall be the food labeling regulations of this state." Cal. Health & Safety Code

25  § 110100(a) (emphasis added). Thus, if FDA were to remove or modify a regulation on which

26  plaintiffs rely, plaintiffs' claims would fail instantly because FDA's action would have the effect

27  of also removing the requirement from the Sherman Law.

28

11

Chief Judge Seeborg, in *Chong v. KIND LLC*, dismissed virtually identical claims brought against another food manufacturer on precisely these grounds. *See* 2022 WL 464149, at *4. In *Chong*, as here, the plaintiffs claimed that the defendant had failed to provide the "% Daily Value" of protein in the Nutrition Facts box. *Id.* at *1. And in *Chong*, as here, the plaintiffs argued that they could pursue a misbranding claim based on this allegation because their claims were based on state-law claims that "parallel the FDA regulations." *Id.* at *4. But Judge Seeborg rightly rejected these arguments, explaining:

> Although plaintiffs are correct that the FDCA does not preempt preexisting state common-law duties that "parallel federal requirements," ***it does preempt state-law claims that ultimately are dependent on the existence of violations of federal law*** . . . Plaintiffs here are not pursuing pre-existing, traditional, state tort law claims, rather they rely on California's Sherman Law, which post-dates and is entirely dependent upon the FDCA, in that it expressly adopts the FDCA and regulations as state law. . . . ***As such, plaintiffs' claims based on the omission of the % DV in some of [defendant's] product labels are preempted***.

*Id.* (emphasis added).

Plaintiffs may argue against preemption of their percent-daily-value claims by pointing to *Brown v. Van's International Foods, Inc.*, in which Judge Orrick disagreed with Chief Judge Seeborg's conclusion that only "pre-existing, traditional, state tort law claims" survive *Buckman* preemption. *See* 2022 WL 1471454, at *8. *Van's* criticizes Chief Judge Seeborg for relying on a concurring Ninth Circuit opinion in *Stengel v. Medronic, Inc.*, 704 F.3d 1224, 1235 (9th Cir. 2013). But Chief Judge Seeborg was entirely correct to rely on *Stengel*'s concurring opinion, as it was issued by the majority of the *en banc* panel and thus controls. *Stengel*, 704 F.3d at 1235 (concurrence of seven judges in eleven-judge panel); *see also, e.g.*, *United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013) (noting "concurring opinion, joined by a majority of the en banc panel, clearly controls [the relevant] issue"). Not surprisingly, the Ninth Circuit has repeatedly cited the *Stengel* concurring opinion in subsequent decisions. *See, e.g.*, *Perez*, 711 F.3d at 1117; *In re Bard IVC Filters Prod. Liab. Litig.*, 969 F.3d 1067, 1075 (9th Cir. 2020). Regardless, *Van's*

never distinguishes *Buckman* itself, where the relevant state law claims—like the claims here—"exist[ed] solely by virtue of the FDCA disclosure requirements." *Buckman*, 531 U.S. at 352-53. Put simply, in the only way the concept has legal significance, plaintiffs' percent daily value claims could not exist independently of FDA regulations and, therefore, the claims are subject to *Buckman* preemption. If plaintiffs' claims were permitted to go forward, "the doctrine of implied preemption under 21 U.S.C. § 337(a) and *Buckman* would be almost entirely eliminated and private citizens would in effect be permitted to enforce the FDCA's requirements." *DeBons v. Globus Med., Inc.*, 2014 WL 12495351, at *4 (C.D. Cal. Aug. 8, 2014), *aff'd*, 668 F. App'x 258 (9th Cir. 2016). For these reasons, the Court must dismiss plaintiffs' claims as preempted.

### 2. Plaintiffs Lack Standing And Cannot Establish Reliance Necessary For Their Percent Daily Value Claims

"Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). Yet here, plaintiffs cannot articulate how they possibly could have been injured by the alleged *absence* of the percent daily value figures on Birch Benders products given that they indisputably *knew* that those figures were absent from those products. *See* Compl. ¶¶ 60, 65 (plaintiffs "regularly check[] the [Nutrition Facts box] before purchasing any product for the first time, including the % [daily value] column for protein when manufacturers provide it"). Likewise, a plaintiff who is "not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law'" has no standing. *TransUnion LLC*, 141 S. Ct. at 2206. Thus, even if plaintiffs were correct that Birch Benders should have stated the percent daily value figure, they are "not accountable to the people and are not charged with pursuing the public interest in enforcing [Birch Benders'] general compliance with regulatory law." *Id.* at 2207. Accordingly, plaintiffs' claims based on the alleged omission of percent daily value in Birch Benders products should be dismissed for this additional reason. Indeed, in *Chong*, Chief Judge Seeborg held that even if plaintiffs' percent-daily-value claims were not preempted, they likely would be subject to dismissal because plaintiffs had failed to allege a cognizable injury. *Chong*, 2022 WL 464149, at *4 n.1.

13

For the same reason, plaintiffs have failed to establish reasonable reliance. The fact that plaintiffs allegedly *proceeded to purchase the Birch Benders products despite the alleged absence of this information* demonstrates that it was not relevant to their purchasing decision. Yet pleading actual reliance on the purported misrepresentations is an essential element of their claims. *See Bohac v. Gen. Mills, Inc.*, 2014 WL 1266848, at *10 (N.D. Cal. Mar. 26, 2014); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320-21, 326 (2011). Therefore, plaintiffs' percent-daily-value claims fail for this additional reason.

## C.   Plaintiffs Lack Standing To Pursue Injunctive Relief

To satisfy Article III's case-or-controversy requirement, a plaintiff who requests injunctive relief must allege facts showing he or she likely will suffer imminent and irreparable injury in the future without an injunction. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966-72 (9th Cir. 2018); *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1087 (9th Cir. 2020) (*Davidson* requires a plaintiff to plausibly allege a desire to purchase the product in the future).

But here, plaintiffs fail to plausibly allege a desire to purchase Birch Benders' products in the future. Plaintiffs assert that "[i]f the Products were reformulated to provide in a usable form the grams of protein that are represented on the labels, [they] would likely purchase them again in the future." Compl. ¶¶ 62, 67. The allegation that plaintiffs "would likely purchase" Birch Benders' products again is not sufficiently concrete. Plaintiffs candidly admit that their willingness to repurchase depends on Birch Benders reformulating its products—evidently to contain animal-based proteins. Plaintiffs apparently are not interested in repurchasing, for example, Birch Benders Plant Protein Pancake and Waffle Mix if (as they allege) it has 10 grams of non-fully-digestible protein, even if it were labeled as such. They accordingly lack standing to pursue injunctive relief. *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (holding that the plaintiff's "would 'consider buying'" allegations and a mere intent to purchase the defendant's products in the future were insufficient to sustain Article III standing); *In re Coca-Cola Prods. Mkt'g & Sales Pracs. Litig.*, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021) ("[T]he imminent injury requirement is not met by alleging that the plaintiffs would *consider* purchasing [the product].")); *Joslin v. Clif Bar & Co.*, 2019 WL 5690632, at *4 (N.D. Cal. Aug.

14

26, 2019) (plaintiffs lacked standing to pursue injunctive relief where they alleged defendant's product does not contain real white chocolate and suggested they "do not want products that do not contain real white chocolate").

Moreover, plaintiffs are now fully aware that Birch Benders' front-of-pack protein claim is a statement of the absolute quantity of protein that mirrors the Nutrition Facts box, that some proteins are not always fully digested by humans, and that some of the protein in Birch Benders' products is plant-based (Compl. ¶ 33), a fact which plaintiffs could also verify by looking at the ingredient list. "[W]here a plaintiff learns information during litigation that enables her to evaluate product claims and make appropriate purchasing decisions going forward, an injunction would serve no meaningful purpose as to that plaintiff." *Jackson v. Gen. Mills, Inc.*, 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020). Accordingly, plaintiffs cannot establish a likelihood of future harm sufficient to confer standing to sue for injunctive relief. *See, e.g., Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 907 (N.D. Cal. July 1, 2021) (no standing where plaintiff knew that previous misrepresentation had been cured by "consulting the back labels"); *Rahman v. Mott's LLP*, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018).

## IV.   ALTERNATIVELY, THE COURT SHOULD STAY THIS ACTION PENDING THE APPEAL OF DISMISSALS OF NEAR-IDENTICAL CASES

This Court should dismiss plaintiffs' claims for the same reasons that other Ninth Circuit district courts have dismissed near-identical claims brought by plaintiffs' counsel. *See, e.g.*, *Chong v. KIND LLC*, 2022 WL 464149; *Nacarino*, 2022 WL 390815; *Kellogg*, 2022 WL 983268. However, to the extent the Court would prefer guidance from the Ninth Circuit before doing so—guidance that is imminent given pending appeals in the *Chong*, *Nacarino*, and *Kellogg* actions—Birch Benders respectfully submits that the Court should stay this action while those appeals are pending. Though plaintiffs' counsel has declined Birch Benders' proposal for a stay pending those appeals (Borders Decl. ¶ 2), such a stay is plainly warranted here. "The Ninth Circuit's decision[s] will simplify this case in that it will provide clarity and guidance to the parties and the Court on how [p]laintiffs may proceed—if at all—with their claims." *Ocampo v. Apple, Inc.*, 2022 WL 1786583, at *1 (N.D. Cal. Apr. 7, 2022). Further, a stay would not impose

any damage on plaintiffs, but would avoid prejudicing Birch Benders by forcing it to litigate claims that are identical to ones that other courts have dismissed. *See id.* (noting courts consider "possible damage" from stay and "hardship or inequity" to parties if a stay does not go forward). Accordingly, if the Court is not yet prepared to dismiss this action, it should stay the case pending the Ninth Circuit's decisions in *Chong*, *Nacarino*, and *Kellogg*.

## V. <u>CONCLUSION</u>

For the reasons above, Birch Benders respectfully requests that the Court dismiss plaintiffs' claims against it with prejudice or, alternatively, stay this action pending the Ninth Circuit's decisions in the *Chong*, *Nacarino*, and *Kellogg* actions.

Dated: June 2, 2022                    Respectfully submitted,

                                       MAYER BROWN LLP
                                       KERI E. BORDERS
                                       DALE J. GIALI
                                       DANIEL D. QUEEN

                                       By: */s/ Keri E. Borders*
                                                Keri E. Borders

                                       Attorneys for Defendant
                                       Birch Benders, LLC

DEFENDANT BIRCH BENDERS, LLC'S MOTION TO DISMISS;
CASE NO. 3:22-CV-02194-TSH